### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>            Plaintiff,<br>    v.<br>**DAVID H. SAFAVIAN**,<br>            Defendant. | **Criminal No.** 05-370 (PLF) |

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant David H. Safavian, through undersigned counsel, hereby submits the following Sentencing Memorandum, requesting that this Court exercise its discretion to issue a sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  Mr. Safavian appreciates the seriousness of the offenses of which he has been convicted.  In this Memorandum he presents the reasons why a sentence alternative to incarceration, including probation, home detention, and/or community service, would achieve federal sentencing objectives.

### I.    AN ALTERNATIVE SENTENCE IS WARRANTED

#### A.  Mr. Safavian Has Already Suffered Considerable Punishment for His Offenses

Since he was first stopped by police near his home in August 2005, Mr. Safavian's life has been in ruins.  His actions and the legal proceedings against him have been thoroughly documented in the press, destroying his professional reputation and effectively precluding him from ever again holding a position of public trust.  As a result of his convictions, he will lose his law licenses and be suspended from government contracting.  Although he currently maintains a small consulting business, he is unable to attract a significant number of paying clients, nor is he ever likely to do so, given his imminent disbarment and government suspension.  The family's savings and financial security have been eviscerated, due in large part to Mr. Safavian's inability

to earn a meaningful income.  In order to help provide for his family and cover his legal expenses, Mr. Safavian has drained his retirement savings, and the family has incurred considerable amounts of debt.

The substantial decline in their overall income has required the Safavians to drastically alter their way of life.  In the last four years, they have eliminated entirely any allowances for dining out, entertainment, and similar expenses.  They take no vacations other than to drive to stay with family members.  In addition, because he is unable to otherwise support his family, since the Fall of 2005, Mr. Safavian has served as the primary caregiver to his six-year-old daughter.  He prepares all of the family's meals and is responsible for all of the household cleaning, maintenance, and repair.  In the coming months, Mr. Safavian's contributions at home will assume even greater importance, as the family prepares for the arrival of its second child.

The toll these events have taken on Mrs. Safavian also cannot be overstated. Her career has been badly damaged as a result of the severe public criticism of Mr. Safavian's actions.  Her professional ethics and integrity have been questioned, and she has been excluded from certain professional opportunities because of her relationship with her husband.  She has been urged to change her name in order to distance herself from him.  She, like Mr. Safavian, has been the victim of harassment and threats.  Mrs. Safavian has witnessed the demise of her husband's career and reputation, and she now bears the pressures of supporting her family on her government income.

Mr. Safavian is painfully aware of these and other hardships he has imposed on his family and loved ones.  He also recognizes that not only has his family suffered as a result of his conduct, but his actions have shamed his former colleagues at the GSA and detracted from the integrity of that important government agency.  He suffers daily reminders of the pain he has caused others, and he deeply regrets the impact his decisions have had on his family members,

friends, peers, and colleagues.  The ongoing consequences of those actions have already served to punish him severely and deter him from any future misconduct.

Mr. Safavian has paid, and continues to pay, an enormous price for his conduct.  He respectfully requests that this Court consider the punishment that he and his family have already suffered when determining an appropriate sentence under 18 U.S.C. § 3553(a).  In particular, he requests that the Court exercise its statutory discretion in issuing a sentence alternative to a term of imprisonment.  Such a sentence would be "sufficient, but not greater than necessary" to satisfy the sentencing objectives set forth in 18 U.S.C. § 3553(a).  Moreover, it is clearly within this Court's discretion to issue a sentence outside of the Guidelines sentencing range.  The Supreme Court has held that, when considering an appropriate sentence, district courts may not even presume that the Guidelines range is reasonable.  *Gall v. United States*, 128 S. Ct. 586, 596-97, 552 U.S. 38, --- (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007).  Rather, the sentencing judge "must make an individualized assessment based on the facts presented."  *Gall*, 128 S. Ct. at 597, 552 U.S. at ---.  Mr. Safavian respectfully submits that the facts presented here warrant a sentence of probation, home confinement, and/or community service.

### B.  An Alternative Sentence Would Comply With Federal Sentencing Objectives

Mr. Safavian's history and characteristics counsel strongly in favor of a lenient sentence that reflects his positive contributions to society.  Indeed, what distinguishes Mr. Safavian's background and character is his commitment to his family, his community, and his country.  Although the offenses of which he has been convicted are serious, the conduct that formed the basis for those convictions stands as an anomaly in a life otherwise comprised of hard work and dedication to family and public service.

In 2001, Mr. Safavian left a career in private consulting to serve as the Chief of Staff to Congressman Chris Cannon.  One year later, he accepted the position of Chief of Staff at the GSA, and, in 2004, he began serving as Administrator of the Office of Federal Procurement

Policy of the Office of Management and Budget. In all of these roles, he was respected and regarded as an industrious and skilled employee. *See, e.g.*, 12/9/08 p.m. Tr. 8:10 – 12:8 (Testimony of GSA Administrator, Stephen Perry, stating that he "had the highest trust in [Mr. Safavian's] judgment" and describing Mr. Safavian as a hard worker to whom he delegated the management of complex and challenging assignments).

Mr. Safavian has also devoted a significant portion of his personal time to community service. In January 2002, he began volunteering for the Metropolitan Police Department as a reserve officer in the District of Columbia. Beginning in late 2004, he also served as a volunteer police auxiliary officer for the town of Dumfries, Virginia. Unfortunately, Mr. Safavian was required to resign those positions following his arrest, and he is no longer permitted to serve as a reserve officer. Nevertheless, Mr. Safavian remains committed to community service, and he volunteers regularly at his church and his daughter's school.

The nature of Mr. Safavian's offenses also warrants an alternative sentence. The four convictions against him all arise out of a limited set of interactions: his communications with Jack Abramoff regarding GSA-controlled properties and his travel with Mr. Abramoff to Scotland and England. Mr. Safavian failed to appreciate that his communications with Mr. Abramoff were inappropriate, and he failed to challenge Mr. Abramoff's statements regarding the cost of the trip. Those events, alone, ultimately served as the basis for all of the charges against him.

To the extent Mr. Safavian did provide assistance to Mr. Abramoff, that assistance too was quite limited. In fact, Mr. Abramoff never bid on or obtained any GSA property, nor did he otherwise benefit from any GSA action. Finally, although Mr. Safavian recognizes that he should never have trusted Mr. Abramoff as he did, and he appreciates that the assistance he provided Mr. Abramoff detracted from the integrity of the GSA, it is critical to note that his actions did not result in any economic loss to either the United States government or society.

In short, Mr. Safavian has devoted much of his life to serving others through his professional endeavors and civic commitments.  He is extremely unlikely to engage in any future misconduct, and he poses no future threat to society.  As set forth in detail above, he has already suffered dearly for his actions.  For these reasons, he respectfully requests that this Court exercise its discretion to issue a sentence of probation, home detention, and/or community service.  Such a sentence would be sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

What is more, not only is a sentence of imprisonment unnecessary in this case, but Mr. Safavian's wife, daughter, and unborn child would be the ones upon whom the weight of his incarceration would fall.  Mrs. Safavian would be rendered a single mother, just as the family welcomes a second child.  Mr. Safavian would be absent for the birth of that child and would miss critical months of its life.  His absence would also be very difficult on his six-year-old daughter, with whom he is extremely close and for whom he serves as the primary caretaker.  Punishment of this sort surely would be greater than necessary to comply with federal sentencing objectives, particularly in light of the price Mr. Safavian—and his family—have already paid for his conduct.

## II.    IN NO EVENT CAN THE SENTENCE EXCEED THAT IMPOSED IN THE FIRST SENTENCING PROCEEDING

Even if this Court determines to impose a sentence including a term of imprisonment, in no event can that term exceed the 18-month sentence imposed following Mr. Safavian's first trial.  In *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), the Supreme Court held that a defendant's right to due process of law is violated where, on retrial, a sentencing court enhances the defendant's sentence without tying that enhancement to "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."  In that case, the defendant was convicted of assault with intent to

commit rape and was sentenced to a prison term of 12 to 15 years. *Id.* at 713. Following a state post-conviction proceeding, his convictions were reversed. *Id.* He was then retried, convicted, and sentenced to eight years' imprisonment, which, when added to time he had already spent in prison, amounted to a longer sentence than that imposed at the first trial. *Id.* In a federal post-conviction proceeding, the district court concluded that imposition of the longer sentence was unconstitutional. *Id.* at 713-14. The Fourth Circuit affirmed, *id.* at 714, and the Supreme Court agreed, reasoning that the government had failed to "offer[] any reason or justification for [the new] sentence beyond the naked power to impose it," *id.* at 726. Today, that case stands for the common sense proposition that although a sentencing court *may* impose a more severe sentence upon retrial, it must identify objective reasons for doing so, such as "evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." *Id.* at 723. Absent such justification, a presumption of impermissible vindictiveness will apply. *See id.* at 724.

This case is exactly like *Pearce*.[1] As in *Pearce*, the government presented no evidence at the second trial to justify an increase in Mr. Safavian's sentence. Indeed, the evidence at the second trial was largely a reprise of the evidence presented at the first trial, with the addition of a

---

[1] In contrast, this case does not resemble *Alabama v. Smith*, 490 U.S. 794 (1989). There, the defendant pleaded guilty to charges of burglary and rape and was sentenced to 30 years' imprisonment on each conviction. *Id.* at 795-96. He succeeded in having his guilty plea vacated and was re-tried on charges of burglary, rape, and sodomy, receiving convictions on all three counts. *Id.* at 795-96. The trial court sentenced him to two concurrent terms of life imprisonment for the burglary and sodomy convictions and a consecutive 150-year term on the rape conviction. *Id.* at 796-97. The court justified the sentence by explaining that evidence at trial provided "new information about the nature of [the] crimes and their impact on the victim." *Id.* at 797. The Supreme Court of Alabama reversed, reasoning that *Pearce* required it to set aside the more severe sentence where the events justifying the increase occurred *prior* to the imposition of the original sentence. *Id.* The United States Supreme Court reversed that decision, holding that the *Pearce* presumption of vindictiveness does not arise "when the first sentence was based upon a guilty plea, and the second sentence follows a trial." *Id.* at 795. This holding simply does not apply to the present case, in which Mr. Safavian's first sentence was based not on a guilty plea, but on a jury verdict issued at the conclusion of a full trial.

few new receipts and witness testimony that addressed the exact same travel plans, golf outings, meals, and hotel accommodations that were at issue in the first trial.[2]  In fact, if anything, the evidence adduced at the second trial supports a more *lenient* sentence than that originally imposed, because, unlike in the first trial, Mr. Safavian did not testify.  Thus, there is no basis for arguing, as the government previously did, that for purposes of calculating the appropriate Guidelines sentencing range, Mr. Safavian's base offense level should be increased "for obstructive conduct, namely [his] false testimony at trial."  Gov't Sent. Mem., Dkt No. 132, at 5.

For these reasons, any sentence in excess of 18 months' imprisonment is unwarranted, and the government would be unable to rebut the presumption of vindictiveness that would arise if in fact Mr. Safavian received such a sentence.

## III.    ALL FOUR OFFENSES OF CONVICTION SHOULD BE GROUPED PURSUANT TO USSG § 3D1.2

Finally, if the Court awards a sentence including a term of imprisonment, that sentence should account for the fact that all four counts of conviction should be grouped under USSG §3D1.2.  All four counts involve the same victim, the United States government, and all involve acts connected by a common objective.

Courts frequently group offenses for which the victim is the United States government, regardless of whether the defendant's conduct affected multiple entities or individuals within the government.  *See, e.g.*, *United States v. Frank*, 354 F.3d 910, 916-18, 924 (8th Cir. 2004) (finding that all forty-nine counts involved the same victim, despite the fact that the defendant's conduct was directed at multiple governmental organizations).  Such an approach is justified on the theory that a government office or agency, "as a representative of society, cannot reasonably be construed as a victim separate from society," and therefore neither should those federal

---

[2] The government also has identified no conduct in which Mr. Safavian has engaged since the original sentencing that might otherwise justify a longer sentence.  Nor could it, for Mr. Safavian has complied dutifully with all of the Court's orders regarding the terms of his release.

entities be construed as distinct from one another for sentencing purposes.  *See United States v. Berkowitz*, 712 F. Supp. 707, 710 (N.D. Ill. 1989) (grouping two obstruction counts and one count of stealing United States property, and rejecting the government's argument that the victims for the first two, "society" could be distinguished from the victim of the third, the U.S. Attorney's Office), *rev'd on other grounds*, 927 F.2d 1376 (7th Cir. 1991); *see also Frank*, 354 F.3d at 924 (finding that all offenses, though directed at various federal entities, were in fact offenses against "society").  Indeed, in this case, the Presentence Investigation Report itself identifies only "general community harm" resulting from Mr. Safavian's conduct; it omits entirely any reference to discrete victims.  PSR at 8, ¶30 ("Other than general community harm, we have not identified a victim who suffered harm as a result of the defendant's conduct.").  Because the only victim of Mr. Safavian's conduct was the United States (or society as a whole), the grouping analysis should properly reflect the fact that all of the counts involve only a single victim.

        In addition, the Sentencing Guidelines make clear that offenses connected by a common scheme or objective should be grouped together for sentencing purposes.  USSG § 3D1.2(b); *id.* cmt. n.4; *see also United States v. Emerson*, 128 F.3d 557, 564-66 (7th Cir. 1997) (finding that counts for mail fraud and money laundering were closely related and should be included within a single sentencing group, because the money laundering was intended to hide the illegal proceeds from the mail fraud scheme).  Here, the government has consistently and repeatedly argued that all of the charges against Mr. Safavian are connected by a common objective—Mr. Safavian's intent to conceal the "true" nature of his relationship with Jack Abramoff.  *See, e.g.*, 12/16/08 a.m. Tr. 167:2-7 ("It is a case about lies to get cover to go on the trip, and then lies covering up what Jack Abramoff was doing and how David Safavian was helping him.").  The grouping analysis must take into account the fact that, according to the government's own theory of the

case, the conduct that formed the basis for all of the charges is connected by a single, common objective.

For these reasons, because all counts satisfy both elements of the grouping analysis prescribed by § 3D1.2, all should be included within a single sentencing group, the Guidelines range should be revised accordingly, and the final sentence should take into account that revised Guidelines range.

## CONCLUSION

For the foregoing reasons, Mr. Safavian respectfully requests that the Court impose a sentence of probation, home detention, and/or community service.

Dated:  October 9, 2009                    Respectfully submitted,


    /s/ Richard A. Sauber_____
Lawrence S. Robbins, DC Bar #420260
Richard A. Sauber, DC Bar #385070
Donald J. Russell, DC Bar #474445
Lisa K. Helvin, admitted *pro hac vice*
**ROBBINS, RUSSELL, ENGLERT, ORSECK,**
   **UNTEREINER & SAUBER LLP**
1801 K Street, N.W., Suite 411L
Washington, D.C.  20006
Tel. No. 202-775-4500
Fax No. 202-775-4510


Andrew A. Nicely, DC Bar #458805
Elizabeth G. Oyer, DC Bar #501260
**MAYER BROWN LLP**
1909 K Street, N.W.
Washington, D.C.  20006-1101
Tel. No. 202-263-3000
Fax No. 202-263-3300


**Attorneys for David H. Safavian**

# ATTACHMENT A

# FILED UNDER SEAL

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2009, I caused a true and correct copy of the foregoing

to be served via the Court's ECF filing system on:

Nathaniel B. Edmonds
Senior Trial Attorney, Fraud Section
U.S. Department of Justice
Nathaniel.Edmonds@usdoj.gov

Justin V. Shur
Trial Attorney, Public Integrity Section
Criminal Division
U.S. Department of Justice
Justin.Shur@usdoj.gov

Albert Stieglitz, Jr.
Trial Attorney, Fraud Section
Criminal Division
U.S. Department of Justice
Albert.Stieglitz@usdoj.gov

_____/s/ Lisa K. Helvin_____