UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 05-370 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID HOSSEIN SAFAVIAN, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

**INTRODUCTION**

The United States of America, by and through its undersigned attorneys, hereby respectfully submits this memorandum in response to Defendant David Safavian's request for a downward departure and a reduced sentence far below the Sentencing Guidelines range. The defendant, once again, was convicted by a jury of false statements and obstruction of justice. Safavian suggests that he should not serve a term of imprisonment, as provided for under the Guidelines, because he was a prominent public official and performed good deeds while simultaneously engaging in the crimes for which he was convicted. Rather than provide a basis for leniency, Safavian's privileged position makes his criminal conduct all the more reprehensible. Taken together with his failure to show any remorse, the defendant's abuse of his position of trust counsels against awarding him the breathtakingly lenient sentence of probation or home detention that he requests.

The reasonableness of any sentence must be assessed in light of the totality of the circumstances in this case, including the seriousness of the convicted offenses, the injury that the

defendant's crime inflicted on the image and functioning of the United States Government, and the need to deter others from engaging in similar criminal activity. *See* 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220, 263 (2005). In light of these and other factors, the Government respectfully submits that there is simply no basis for this Court to accept the defendant's invitation to disregard the Sentencing Guidelines. For the reasons set forth below and in the Government's October 11, 2006 Sentencing Memorandum, which are incorporated by reference herein, the Government respectfully requests that the Court sentence the defendant to serve a term of incarceration that falls within the Guidelines range.[1]

## ARGUMENT

### I. A SENTENCE OF IMPRISONMENT IS APPROPRIATE GIVEN THE SERIOUSNESS OF THE CONVICTED OFFENSES

Defendant's conduct in this case was extremely serious, as it constituted an abuse of the public trust. Safavian's request for leniency focuses on the defendant's claim that "his actions did not result in any economic loss to either the United States Government or society." Def. Mem. at 4. As a threshold matter, the added investigation and expended resources resulting from the defendant's lies and obstructive conduct did, in fact, cause a financial loss to the taxpayers.

Moreover, the defendant's crimes caused significant injury to the image and integrity of the United States Government. Safavian recognizes that his relationship with former lobbyist Jack Abramoff negatively affected the integrity of GSA (Def. Mem. at 4), but the defendant's

---

[1] According to the Presentence Investigation Report ("PSR"), the United States Probation Office calculated a Guidelines range of 15 to 21 months. As set forth in the Government's objections to the PSR, the Government is of the view that, based on the application of the Guidelines Manual in effect at the time of sentencing (*i.e.* 2008 Manual), or alternatively the Guidelines Manual in effect at the time the convicted offenses occurred (*i.e.* 2004 Manual), the appropriate Guidelines range is 21 to 27 months. The Government does not address here the defendant's argument regarding Grouping, but agrees with the PSR and the Court's November 16, 2006 ruling that different government entities are different victims for purposes of U.S.S.G. § 3D1.2.

repeated lies to conceal this inappropriate relationship and the travel-related gift provided by Abramoff also undermined the systems used to ensure the integrity of all government functions – including ethics officials, annual financial disclosure forms and the Office of Inspector General. Defendant may bemoan the fact that he is now associated with the Abramoff scandal, but Safavian's lies in 2002 and 2003 assisted Abramoff in concealing his extensive criminal activity for several more years.

In addition, while the defendant had the privilege to serve this country, he repeatedly abused that privilege. Safavian was appointed to a position of tremendous authority in the United States Government and yet used that position to unfairly advantage Abramoff in violation of the defendant's ethical duties. Then, when confronted about his conduct, rather than admit the truth, he lied repeatedly. Safavian's lies, which covered a span of three years, were designed for no purpose other than to protect him from, at the very least, public censure and reprimand or, at worst, criminal prosecution. All of these lies were premeditated and designed to keep his unethical relationship with Jack Abramoff from becoming public.

In support of the defendant's request for leniency, Safavian relies on lofty rhetoric to describe his years in public service. Yet, as a result of the crimes he committed, Safavian did a great *disservice* to the organizations that he served – a tremendous disservice that must be weighed against any purported benefit. While the defendant's colleagues may have respected him at the time as he now claims (Def. Mem. at 4), Safavian's lasting legacy to those public officials will be one of cynicism and disillusionment at his hypocrisy. These public officials, and others, should not receive the further lesson that participating in serious crimes carries only the risk of a slap on the wrist.

Moreover, the record does not demonstrate any distinction between Safavian and the countless other public officials whom, unlike Safavian, are able to maintain the integrity on which the United States Government depends. Thus, rather than providing mitigation for the defendant's crimes, the position of trust he held makes his criminal conduct even more reprehensible. This is a man who did not need to commit the convicted offenses to feed his family or to preserve his physical safety. Safavian committed the crimes, which a jury found beyond a reasonable doubt, simply because he thought he could get away with it. The court should find an aggravating factor, not a mitigating one, that – while committing the convicted offenses – Safavian was a high-level public official.

Because of the high-level of his position, Safavian's actions are particularly damaging because they effectively undermine the trust that the public should have in its government and high-level officials. The defendant abused the trust that was placed in him and attempted to use his high office to further his own selfish aims. Then, he lied to cover his tracks. Now, after having repeatedly abused the public's trust, Safavian asks this Court to disregard the Sentencing Guidelines and impose an extraordinarily lenient sentence. Such a sentence is wholly unwarranted and would constitute a miscarriage of justice. Rather, a sentence of imprisonment within the Guidelines range is appropriate based upon the seriousness of the convicted offenses.

## II. SAFAVIAN UNPERSUASIVELY SEEKS LENIENCY BASED ON COLLATERAL CONSEQUENCES COMMON TO NEARLY ALL CRIMINAL DEFENDANTS

In his sentencing memorandum, Safavian argues that he already has been punished enough. The defendant, in support of this argument, points out that as a result of his conviction, he has lost his job, forfeited his law license, and is barred from government contracting. A defendant's subsequent difficulty obtaining employment is one of the most universal

consequences flowing from a felony conviction. That is the case in drug convictions, securities fraud convictions, money laundering convictions, and every other type of felony conviction. It is the antithesis of "extraordinary" to suffer this consequence, and, thus, it should not justify the imposition of a sentence outside the Guidelines range.

Safavian also argues that a greater sentence would have an adverse impact on his family. The purported impact on the defendant's family is not so far "outside the heartland" in criminal cases as to warrant a downward departure. While any trauma caused to Safavian's family due to sentencing is deeply regrettable, it is important to note that the cause of the trauma is Safavian's own wrongdoing – not merely on a single occasion, but repeatedly over the span of several years.

Moreover, similar to loss of employment, the loss of Safavian's emotional support as a result of sentencing is a consequence common to all criminal defendants. The financial and emotional hardships suffered as a result of a criminal conviction, while undoubtedly real, hardly make the defendant's situation unique. Indeed, the same hardships would likely be endured by virtually any white collar defendant. If these natural and foreseeable consequences of Safavian's criminal conduct meant that he should not have to go to prison, then few white collar defendants would ever be incarcerated. At least in this case, based on the PSR, it appears that Safavian's family is not uniquely dependent on this defendant for its financial, emotional, or physical well-being. The imposition of a Guidelines sentence, therefore, will not inflict the sort of extraordinary harm to the defendant's family that justifies the extraordinary leniency that Safavian seeks.

### III. A TERM OF IMPRISONMENT IS NECESSARY TO AFFORD ADEQUATE DETERRENCE

A prison sentence is necessary to deter others from engaging in similar criminal activity. Safavian argues that deterrence is no longer an issue. Safavian, however, has utterly failed to

demonstrate any sort of contrition. Far from taking responsibility for his criminal conduct as he claims, defendant has tried to deflect blame from himself and place it on Abramoff while at the same time minimizing the conduct for which he has been convicted. Def. Mem. at 4 ("Safavian failed to appreciate that his communications with Abramoff were inappropriate, and he failed to challenge Abramoff's statements regarding the cost of the trip"). Safavian has expressed no remorse, no acceptance of responsibility, and no recognition that he did anything improper. Instead, he improperly seeks credit for not fleeing the jurisdiction and complying with the conditions of pre-trial services. Without any recognition that he acted wrongfully, Safavian has given the Court no basis to believe that he would make different choices than the ones that led to his conviction in this case

Moreover, Safavian, looks merely at specific deterrence – whether he, alone, will commit another crime. In doing so, the defendant points to the fact that he will be disbarred from practicing law, he lost his job and reputation, and that this case has placed a significant emotional toll on him and is family. None of these facts, taken alone or in combination, come close to providing adequate deterrence to <u>other</u> public officials who routinely face temptations to enrich themselves and conceal their wrongdoing rather than faithfully serve the public good.

Defendant's loss of job and reputation, and the resulting emotional toll, were an entirely foreseeable and predictable consequence of his criminal conduct. Safavian, nonetheless, chose to ignore the distinct possibility that if he broke the law he could lose these things that were so important to him. Obviously, the prospect of such loss was not adequate to deter him at the time that he chose to commit the crimes. Nor is the prospect, alone, adequate to deter others who might be tempted to use their public office for private gain and to then lie to government officials in an effort to ensure their unethical conduct is not discovered. A term of imprisonment is

necessary to highlight to other public officials that engaging in unethical conduct and then lying to conceal it – whether to ethics officials, on annual financial disclosure forms or to law enforcement agencies – is a serious enough offense to warrant not mere moral condemnation but loss of liberty.

IV. **DEFENDANT'S ACTIONS WERE NOT ABERRANT BEHAVIOR BUT PREMEDITATED AND REPEATED CONDUCT**

Safavian also unpersuasively claims that his participation in the convicted offenses constitutes an aberration in an otherwise law-abiding life. This argument fails to justify leniency under the Sentencing Guidelines. The evidence in the record demonstrates that Safavian's criminal conduct was anything but "aberrant" under the Sentencing Guidelines. U.S.S.G. § 5K2.20. Rather than conduct that was a "single criminal occurrence" of "limited duration … committed without significant planning," the inappropriate assistance Safavian provided to Abramoff – as evidenced by the scores of e-mails introduced at trial – and the defendant's efforts to cover it up, continued unabated throughout defendant's tenure at GSA, and continued even after the defendant left GSA to become the chief procurement officer of the United States when he served at the Office of Management and Budget. Indeed, Safavian's criminal conduct covered a span of at least three years and involved him making false statements to at least three different government agencies, despite the defendant's claims to the contrary. Def. Mem. at 4 ("convictions against him arise out of a limited set of interactions").

Further, Safavian's conduct consisted of deliberate and planned activity, including, among other things, preparing a sham request for an ethics opinion, drafting a false reimbursement check of $3100 to cover-up his receipt of a gift costing five times as much, falsely certifying his financial disclosure form, submitting false documentation to the Senate, and

lying to the FBI. The defendant's conduct thus constitutes a "single criminal transaction" only at an absurdly high level of generality – a level that saps the phrase of any meaning at all.

## CONCLUSION

For the foregoing reasons, the Government respectfully urges the Court to reject the defendant's requests for a downward departure and a reduced sentence. The Government further submits, respectfully, that in considering all of the factors listed in 18 U.S.C. § 3553(a) a term of incarceration that falls within the Guidelines range would be a reasonable sentence in this case.

Dated: This 12th day of October 2009

Respectfully submitted,

/s/ Justin V. Shur
Nathaniel B. Edmonds
Justin V. Shur
Albert Stieglitz, Jr.
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20005

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing by electronic mail to:

        Lawrence S. Robbins
        Richard A. Sauber
        Donald J. Russell
        Lisa K. Helvin
        Andrew A. Nicely
        Elizabeth G. Oyer

DATED:    October 12, 2009
               Washington, DC

                                          /s/ Justin V. Shur
                                          Justin V. Shur
                                          United States Department of Justice
                                          1400 New York Avenue, NW
                                          Washington, DC 20005
                                          Tel: (202) 353-8845
                                          Fax: (202) 514-3003